## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CAROLE REED, on behalf of herself and all others similarly situated,** | **CASE NO.:** |
| **Plaintiff,** | |
| **v.** | **CLASS ACTION COMPLAINT** |
| | **<u>DEMAND FOR JURY TRIAL</u>** |
| **HILL'S PET NUTRITION, INC. and COLGATE-PALMOLIVE COMPANY,** | |
| **Defendants.** | |

Plaintiff Carole Reed ("Plaintiff"), by her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

### <u>NATURE OF THE ACTION</u>

1.      This class action seeks relief on behalf of a Class (including subclasses) of consumers defined herein who purchased certain sizes and varieties of Defendants' Hill's "Science Diet" and/or "Prescription Diet" brands of wet dog food that was recalled by Defendants due to containing toxic levels of Vitamin D (the "Recalled Products").

2.      Pet owners, including Plaintiff and Class members, consider and treat their dogs like members of the family, and placed their trust in Defendants to provide them with safe and healthy food products for their dogs. Based on Defendants' pervasive labeling, marketing, and advertising scheme designed to convince Plaintiff and Class members that the Recalled Products were safe, healthier and superior to other brands of wet dog food due to having specialized and

targeted health and nutritional benefits, Plaintiff and Class members purchased the Recalled Products at a premium price over other brands.

3.    As discussed herein, despite Defendants' representations and warranties that the Recalled Products were safe, healthier and superior and subject to rigorous daily quality assurance and safety inspections, Defendants admitted on January 31, 2019 to breaking Plaintiff's and Class members' trust by proliferating at least 675,000 cases (13.5 million cans)[1] of Recalled Products that contained toxic levels of Vitamin D.  Defendants admitted that such toxic levels of Vitamin D can lead to serious health issues such as vomiting, loss of appetite, increased thirst, increased urination, excessive drooling, and weight loss and, when consumed at very high levels, potentially life-threatening health issues including renal dysfunction.  This renders the Recalled Products ultrahazardous for dogs to consume and, therefore, entirely worthless as a dog food.

4.    Defendants, through Hill's Pet Nutrition, Inc., issued the first recall notice on January 31, 2019[2] ("January 31, 2019 Recall"), and despite representing and warranting that they "isolated the issue" and that they have "tighter quality controls in place to prevent this from happening again,"[3] Defendants *expanded the recall with its March 20, 2019 Recall to include additional products* ("March 20, 2019 Recall").[4]

5.    Furthermore, despite knowing or having reason to believe that its Recalled Products were potentially dangerous due to containing toxic levels of Vitamin D at least as early as December 2018,[5] Defendants failed to provide a reasonable and timely warning to consumers and permitted its ultrahazardous Recalled Products to enter the stream of commerce for over thirty (30)

---

[1] *See* https://www.cbsnews.com/news/hills-dog-food-recall-expanded-for-possibly-toxic-vitamin-d-levels/ (indicating that 13.5 million cans were initially recalled prior to Defendants' expansion of the recall on March 20, 2019).
[2] *See* https://www fda.gov/Safety/Recalls/ucm630232 htm.
[3] *See* https://www hillspet.com/productlist/jan-31-press-release.
[4] *See* https://www fda.gov/Safety/Recalls/ucm634087 htm.
[5] *See* https://www.avma.org/News/JAVMANews/Pages/190315d.aspx (indicating that Defendants had reason to suspect that its Recalled Products contained potentially dangerous levels of Vitamin D as early as December 2018).

days until Defendants finally issued the January 31, 2019 Recall, and permitted certain ultrahazardous Recalled Products to continue in the stream of commerce for longer until it issued the March 20, 2019 Recall.

6.     As a result of Defendants' false and misleading representations and warranties, and other conduct described herein, Plaintiff and Class members had no idea that they were purchasing and feeding their dogs food (*i.e.*, the Recalled Products) with toxic levels of Vitamin D and were forced to watch helplessly not knowing the cause as their beloved dogs became violently ill, or even lost their lives due to consuming ultrahazardous and essentially worthless products that they paid a premium for due to their purportedly specialized safety, health and nutritional benefits.

7.     Defendants labeled (and reinforced that labeling with an advertising and marketing campaign) and otherwise warranted the Recalled Products as being safe and healthy for regular consumption by dogs, and assured consumers that they conduct rigorous daily quality assurance and safety inspections to ensure that they (as well as each ingredient contained therein) are safe for consumption by dogs.  However, as described in greater detail herein, the labeling, advertising, marketing and warranties associated with the Recalled Products are false and misleading because the Recalled Products caused injury, illness, and/or death to Plaintiff's and the Class members' household pet dogs.

8.     Ironically, Defendants claim to have a "Commitment to Truth in Advertising" and, in furtherance of the notion that pets are considered a part of the family, claims[6]:

---

[6] https://www.hillspet.com/about-us/press-releases/hills-commitment-to-truth-in-advertising.

Hill's Commitment to Truth in Advertising

At Hill's, we understand that integrity is an essential quality in the company that provides the balanced nutrition your pets eat every day. False and misleading information prevents pet parents from making informed choices when comparing dog and cat foods. Hill's is strongly committed to truthful marketing and honest advertising, and to being the kind of company pet parents and our retail customers can trust and rely on. What we say is in our products is what you'll find in the bags or cans you buy.

**Learn more about your rights as a consumer:** U.S. Federal Trade Commission's Truth in Advertising Read more ...

9.     As shown herein, Defendants are not "the kind of company pet parents and our retail customers can trust and rely on" because, despite claiming that "[w]hat we say is in our products is what you'll find in the bags or cans you buy," Defendants violated that trust and allowed millions of cans of Recalled Products containing toxic levels of Vitamin D to enter the marketplace.

10.     Plaintiff seeks relief individually, and as a class action, on behalf of a Nationwide Class, a New York Subclass, and alternatively a Multistate Class, as defined herein, for Defendants' violation of New York General Business Law § 349 and New York General Business Law § 350, and for Breach of Express Warranty, Breach of Implied Warranty, Strict Liability - Design Defect, Strict Liability – Manufacturing Defect, Strict Liability – Failure to Warn, Negligence, Negligent Failure to Warn, and Unjust Enrichment under New York common law and the common law of all fifty states.

**PARTIES**

11.     Plaintiff, a resident of Floral Park, Nassau County, New York, regularly purchased several of the Recalled Products from retailers such as Walmart, PetSmart, and others near her home within the past four years, including between January 2018 to March 2019.   Plaintiff

purchased the Recalled Products based on Defendants' labeling and associated advertising and marketing campaigns and warranties touting the Recalled Products as a safe, healthier and superior dog food, and paid a premium price as a result of Defendants' emphasis that the Recalled Products were designed to address health issues or nutritional deficiencies unlike regular priced dog foods, and were subject to rigorous daily quality assurance and safety checks.  Had Plaintiff known the truth that the Recalled Products contained toxic levels of Vitamin D, she would not have purchased these Recalled Products, but would have purchased another brand of wet dog food that did not contain toxic levels of Vitamin D.  Plaintiff's dog became serious ill over a sustained period of time in 2018 and early 2019 resulting in numerous veterinary visits, treatments and expenses, but Plaintiff was unaware that the Recalled Products were the cause until shortly before filing this Complaint.

12.    Defendant Hill's Pet Nutrition, Inc. is a Delaware corporation with its principal place of business at 400 SW 8th Avenue, Topeka, Kansas 66603.  Defendant Hill's Pet Nutrition, Inc. manufactured, inspected, marketed and sold the Recalled Products.

13.    Defendant Colgate-Palmolive Company is a Delaware corporation with its principle place of business at 300 Park Avenue, New York, New York 10022.

14.    Colgate-Palmolive Company is the parent company of Hill's Pet Nutrition, Inc. Colgate-Palmolive Company exercises control over these corporations and derived profit from the sale of the Recalled Products.  Specifically, Colgate-Palmolive Company's 2018 10-K filed with the United States Securities and Exchange Commission states "Colgate, through its Hill's Pet Nutrition segment…is a world leader in specialty pet nutrition products for dogs and cats" and states "Pet Nutrition products include specialty pet nutrition products manufactured and marketed

by Hill's Pet Nutrition."[7] The "pet nutrition products" referred to by Colgate-Palmolive Company in its 2018 10-K include the Recalled Products at issue in this action. Furthermore, according to Colgate-Palmolive's 2018 10-K, "[n]et sales for Hill's Pet Nutrition were [$2.388 billion] in 2018," which includes net sale proceeds from the Recalled Products.[8]

15. In its Corporate Social Responsibility and Sustainability Report 2017, Colgate explains further describing itself as "**a leading global consumer products company, focused on** Oral Care, Personal Care, Home Care, and **Pet Nutrition**. **Colgate manufactures and markets its products under trusted brands such as** Colgate, Palmolive, Speed Stick, Lady Speed Stick, Softsoap, Irish Spring, Protex, Sorriso, Kolynos, Elmex, Tom's of Maine, Sanex, Ajax, Axion, Fabuloso, Soupline and Suavitel, as well as **Hill's Science Diet, Hill's Prescription Diet**, and Hill's Ideal Balance. Report, p. 9.[9] Colgate acknowledges next to a "Hill's" brand logo that: "The vast majority of Colgate products are manufactured in Colgate-owned facilities. Colgate also has an extensive supply chain consisting of thousands of suppliers of raw and packing materials, manufacturing operating supplies, capital equipment, and other goods and services." *Id*. Colgate further acknowledges that it manages all of its brands with "Integrated marketing communications including those addressing "brand purpose," ongoing consumer dialogue, consumer surveys, social media postings." *Id*., p. 13. Colgate has a uniform "CODE OF CONDUCT AND GLOBAL BUSINESS PRACTICES GUIDELINES" applicable to all employees across all brands that governs, among other things, "Advertising and Advertising Placement", "Corporate Governance" and "Product Integrity." *Id*., p. 16. Colgate's Report is linked to on Hill's Pet Nutrition, Inc.'s

---

[7] *See* https://investor.colgatepalmolive.com/node/35226/html.
[8] *Id*.
[9] *See* Colgate Corporate Social Responsibility and Sustainability Report 2017 at
https://www.colgatepalmolive.com/content/dam/cp-sites/corporate/corporate/en_us/corp/locale-assets/pdf/Colgate_CorporateSocialResponsibility_SustainabilityReport_2017.pdf, at pages 9, 13 and 16.

website by clicking "Read More" above which it states "[a]s a Colgate-Palmolive Company, our core values are the foundation of commitment to sustainable development."[10]

16.     Defendants manufactured, advertised, marketed, labeled, offered for sale, sold, and distributed pet food products to consumers, including Recalled Products, throughout the United States and New York using a network of thousands of retailers, which included, as per Colgate-Palmolive Company's 2018 10-K, "authorized pet supply retailers, veterinarians, and e-commerce retailers."[11]

## JURISDICTION AND VENUE

17.     Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2).   Diversity jurisdiction exists as Plaintiff is a New York resident, Defendant Hill's Pet Nutrition, Inc. is a Delaware corporation with its principle place of business in Topeka, Kansas, and Defendant Colgate-Palmolive Company is incorporated in Delaware and maintains its principal place of business in New York, New York.   The Class Plaintiff seeks to certify includes citizens and residents of New York and other states.   Jurisdiction of this Court is proper for reasons including, but not limited to, the following: Plaintiff and one of the Defendants are New York residents, Plaintiff's claims arise out of Defendants' conduct within the Eastern District of New York, including but not limited to Defendants' conduct of selling the Recalled Products to consumers throughout the Eastern District of New York, including to Plaintiff, who purchased the Recalled Products in the Eastern District of New York and whose losses were suffered in the Eastern District of New York, including monetary damages stemming from her purchases of the Recalled Products, veterinary bills, and prescription medicine costs and other related expenses stemming from her dog's consumption of the Recalled Products.   The amount in controversy exceeds $5,000,000 for

---

[10] https://www.hillspet.com/about-us/our-company
[11] *See* https://investor.colgatepalmolive.com/node/35226/html.

Representative Plaintiff and members of the Class (and Subclasses) collectively, exclusive of interest and costs, by virtue of the combined purchase prices, veterinary bills, and prescription medication costs, among other losses, paid by Plaintiff and the Class members, and the profits reaped by Defendants from their transactions with Plaintiff and the Class members, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the statutory penalties and other relief sought.

18.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of herein occurred and affected persons and entities are located in the Eastern District of New York, and Defendants received substantial compensation from such transactions and business activity in the Eastern District of New York, including as the result of purchases of the Recalled Products from retail locations herein, and the interstate trade and commerce described herein is and has been carried out in part within the Eastern District of New York. Moreover, Plaintiff is a resident of Floral Park, Nassau County, New York and her purchases of the Recalled Products were from authorized retailers located within the Eastern District of New York.

## FACTS COMMON TO ALL CLASS MEMBERS

### Defendants' Labeling, Advertising, and Marketing Warranties and Representations

19.     Defendants formulate, develop, manufacture, label, package, distribute, market, and advertise the Recalled Products under the Science Diet and Prescription Diet brands, and sell them at thousands of retailers and veterinary clinics nationwide, and through multiple e-Commerce retailers, including but not limited to Petco, PetSmart, www.Chewy.com, www.Amazon.com, Walmart, and other major retailers.

20.     By labeling, advertising, and marketing their products as outlined below, Defendants intended at all times to convey to consumers that their products, including the Recalled Products, were at all times safe, nutritious, targeted for specific health benefits, and rigorously and consistently (as Defendants claim, "daily") inspected for quality and safety.

21.     However, as shown herein, these representations and warranties are false and misleading. The Recalled Products are not safe, healthy and nutritious, but instead contain toxic levels of Vitamin D, and Defendants either failed to perform the promised "daily" rigorous quality assurance and safety inspections as they claim (which could have prevented widespread distribution of the at least 13.5 million cans of Recalled Products), or did perform such quality assurance and safety inspections and knowingly, recklessly, and/or negligently failed to reasonably and timely warn consumers that the Recalled Products were potentially dangerous due to containing toxic amounts of Vitamin D.

22.     Defendants' labels for the Recalled Products portray those products as safe, healthy and superior by representing that those products are "VETERINARIAN RECOMMENDED," "CLINICAL NUTRITION" or "THERAPEUTIC DOG NUTRITION." Defendants' advertising and marketing serves to reinforce this labeling.

23.     Defendants tout that their "MISSION" is to "help enrich and lengthen the special relationships between people and their pets," that their "VISION" is to "make nutrition a cornerstone of veterinary medicine," and their "PHILOSOPHY" is "We believe all animals — from your pet to the companion animals we care for — should be loved and cared for during their lifetimes":[12]

---

[12] https://www.hillspet.com/about-us/our-company.

**OUR MISSION**

To help enrich and lengthen the special relationships between people and their pets.

**OUR VISION**

To make nutrition a cornerstone of veterinary medicine.

**OUR PHILOSOPHY**

We believe all animals — from your pet to the companion animals we care for — should be loved and cared for during their lifetimes.

24.     Defendants further generally warrant and represent that "[w]e believe that the right nutrition is vital to pets living long, healthy lives" and that "[o]ur safety standards are modeled after human food manufacturers"[13]:



**Nutrition**
We firmly believe that the right nutrition is vital to pets living long, healthy lives.



**Quality**
Our safety standards are modeled after human food manufacturers.

25.     To further back up its warranties and representations about safety, Defendants claim "Safety standards you can trust – Our quality and safety standards are so rigorous, they're modeled after human food manufacturers — so your pet gets a food made with their best interest in mind"[14]:

---

[13] *Id.*
[14] https://www.hillspet.com/about-us/nutritional-philosophy.



26.     In fact, Defendants warrant and represent that their products are "Precisely Balanced: The Right Nutrients in the Right Quantities" and even warn about "The dangers of excessive or deficient nutrient intake"[15]:

## Precisely Balanced: The Right Nutrients in the Right Quantities

While Hill's pet foods contain high-quality ingredients, our research proves that it's the proper balance of 50 nutrients supplied by those ingredients that is the key to optimal health for pets. Guided by our evidenced-based research, Hill's formulated its foods with a precise balance of these nutrients to meet the specific needs of pets associated with their lifestage, size or special needs.

## The dangers of excessive or deficient nutrient intake

Too much or too little of certain nutrients (as shown in the chart below) can impact the health and well-being of pets. In fact, a wide range of common disease conditions can be made worse or even caused by consistently feeding foods with an incorrect balance of nutrients.

---

[15] *See* https://www.hillspet.com/about-us/nutritional-philosophy/properly-balanced-nutrition.

27.     Defendants then provide a graph showing that "EXCESS" vitamins can cause "organ stress"[16]:



28.     Regarding the Science Diet brand, specifically, there are a number of varieties of Science Diet brand dog food which Defendants tout as "VETERINARIAN RECOMMENDED" on their logo that is part of the product labeling as illustrated by examples below:

---

[16] *Id.*

  

29.     Defendants elaborate that "Vets are experts in your dog's health – and more of them recommend the biology-based nutrition of Hill's Science Diet than any other brand, touts that "Your dog deserves a food as delicious as it is nutritious, so we make our foods using only high-quality ingredients […]", and promises a "100% Satisfaction Guarantee […] If you're not satisfied for any reason, simply return [the product] to the place of purchase for your money back"[17]:

**#1 VETERINARIAN RECOMMENDED**

Vets are experts in your dog's health – and more of them recommend the biology-based nutrition of Hill's Science Diet than any other brand.

**INGREDIENTS CHOSEN FOR TASTE & QUALITY**

Your dog deserves a food as delicious as it is nutritious, so we make our foods using only high-quality ingredients, including chicken, lamb and salmon.

**100% SATISFACTION GUARANTEE**

At Hill's, we're dedicated to making foods your dog will love. If you're not satisfied for any reason, simply return it to the place of purchase for your money back.

---

[17] *See* https://www.hillspet.com/science-diet/dog-food#browse-foods.

13

30.     Indeed, Defendants claim that "Hill's understands what dogs need to live a long and healthy life" and that its Science Diet products were developed "with the combined expertise of 220+ vets, scientists and pet nutritionists":[18]



Feed your dog's best life with biology-based nutrition

Knowledge is our first ingredient.

Hill's understands what dogs need to live a long and healthy life.

 Science has driven the creation of our nutrition since 1939

 Developed with the combined expertise of 220+ vets, scientists and pet nutritionists

31.     Defendants also claim that "We optimally select ingredients and nutrients to work with a pet's biology" and indicates with regard to its products "Fed every day, the right nutrition makes little transformations that can add up to incredible results":[19]

---

[18] *Id.*
[19] *Id.*

Feed your dog's best life with biology-based nutrition



Daily nutrition feeds better tomorrows.

Predictive Biology is our science-based approach to creating optimal nutrition.



We optimally select ingredients and nutrients to work with a pet's biology



Fed every day, the right nutrition makes little transformations that can add up to incredible results

32.     According to Defendants, "[c]hoosing a Hill's® Science Diet® brand lifestage pet food gives you the peace of mind in knowing you're feeding nutrition from the company with a more than 60-year history of formulating pet foods with optimum nutrient levels."[20]

33.     Regarding the Prescription Diet brand, specifically, there are a number of varieties of Prescription Diet brand dog food, each of which Defendants represent on the product labeling as providing "CLINICAL NUTRITION" or "THERAPEUTIC DOG NUTRITION" and being targeted for a specific health conditions, including but not limited to digestive care, kidney care, metabolic (weight management), urinary care, skin/food sensitivities, joint care, and aging as illustrated by examples below:

---

[20] https://www.hillspet.com/dog-care/nutrition-feeding/dog-food-for-all-life-stages.



34.     Defendants state that they "work with your veterinarian to deliver the best nutrition-based solutions that help you recapture a normal, vibrant life together":[21]

---

[21] *See* https://www.hillspet.com/prescription-diet/dog-food#learnMore.



35.     Defendants further state "No matter what health issue your dog is facing, our alliance with veterinarians puts us in a unique position to find a solution" and encourages consumers to "[a]sk your vet how the Prescription Diet® dog foods can help his weight, mobility, kidney, digestive, urinary and skin and coat health":[22]



---

[22] *Id.*

36.     On the same page, Defendants also state "NUTRITIONAL RESEARCH & INNOVATION – When you combine our scientific approach to nutrition with the expertise of more than 220 veterinarians and Ph.D. nutritionists worldwide, it's clear that we're much more than just a pet food manufacturer. We love animals and work diligently to make a difference in their lives":[23]



37.     Defendants then go on to state "OUR COMMITMENT TO QUALITY - Peace of mind is priceless. That's why only the best ingredients from the most trusted sources are the foundation for all Prescription Diet® foods. We also conduct 5 million quality and safety checks per year at the facility as well as voluntary third-party inspections nearly every month to ensure that we are maintaining the highest standards. Learn more":[24]

---

[23] *Id.*
[24] *Id.*

38.     By clicking the "Learn more" prompt above, consumers are directed to Defendants' "Quality and Safety" page, where they encourage consumers to "TRUST THE HILL'S STANDARD – A proven commitment to quality and safety":[25]



39.     Defendants then provide a step-by-step overview which explains how Defendants provide ostensibly safe products to consumers.  First, Defendants reiterate that "More than 220 veterinarians, food scientists, technicians and Ph.D. nutritionists at Hill's develop all of Hill's pet foods to meet the needs of your pets."[26]

---

[25] https://www.hillspet.com/about-us/quality-and-safety.
[26] *Id.*

19



**PRODUCT DEVELOPMENT**

More than 220 veterinarians, food scientists, technicians and Ph.D. nutritionists at Hill's develop all of Hill's pet foods to meet the needs of your pets.

40. Defendants then represent and warrant to consumers that ***"[w]e only accept ingredients from suppliers whose facilities meet stringent quality standards and who are approved by Hill's. Not only is each ingredient examined to ensure its safety, we also analyze each product's ingredient profile for essential nutrients to ensure your pet gets the stringent, precise formulation they need."***[27]

**INGREDIENT SUPPLY**

We only accept ingredients from suppliers whose facilities meet stringent quality standards and who are approved by Hill's.

Not only is each ingredient examined to ensure its safety, we also analyze each product's ingredient profile for essential nutrients to ensure your pet gets the stringent, precise formulation they need.



41. Defendants then represent and warrant to consumers that "[w]e conduct annual quality systems audits for all manufacturing facilities to ensure we meet the high standards your pet deserves."[28]

---

[27] *Id.*
[28] *Id.*



**PRODUCT MANUFACTURING**

We conduct annual quality systems audits for all manufacturing facilities to ensure we meet the high standards your pet deserves.

We demand compliance with current Good Manufacturing Practices (cGMP) and Hill's high quality standards, so your pet's food is produced under clean and sanitary conditions.

42.     Finally, Defendants represent and warrant to consumers that ***"[w]e conduct final safety checks daily on every Hill's pet food product to help ensure the safety of your pet's food. Additionally, all finished products are physically inspected and tested for key nutrients prior to release to help ensure your pet gets a consistent product bag to bag."***[29]

**FINISHED PRODUCT**

We conduct final safety checks daily on every Hill's pet food product to help ensure the safety of your pet's food.

Additionally, all finished products are physically inspected and tested for key nutrients prior to release to help ensure your pet gets a consistent product bag to bag.



43.     As such, Defendants represent and warrant to consumers that their products, including the Recalled Products, go through a rigorous quality assurance protocol designed to ensure that they are safe for consumption, which includes ***daily safety inspections, physical inspection of finished products, and physical testing for key nutrients***.

---

[29] *Id.*

44.     Defendants' supposed daily safety inspections on all products would have immediately revealed that the Recalled Products contained toxic amounts of Vitamin D, and 675,000 cases (13.5 million cans) of tainted dog food could not have reached consumers.

45.     Therefore, Defendants either grossly exaggerate the extensiveness of their quality assurance and safety inspections, or performed such inspections and knew or should have known that ultrahazardous Recalled Products containing toxic levels of Vitamin D were reaching consumers without warning, rendering their "Quality and Safety" and other similar representations and warranties discussed herein false and misleading.

46.     All of Defendants' false, deceptive, and misleading labeling, advertising, and marketing representations and warranties are material to consumers' purchasing decisions, as they are specifically tailored to eliminate consumer concern about the suitability, quality, and safety of its Recalled Products.

47.     However, despite Defendants' inescapable representations and warranties about the nutritional quality and safety of their Recalled Products, Defendants negligently, recklessly, and/or intentionally manufactured them with toxic levels of Vitamin D that led to Plaintiff's and Class members' dogs becoming ill or dying due to Vitamin D toxicity and its associated symptoms, rendering the Recalled Products entirely worthless for their intended purpose as a dog food.

**Vitamin D Toxicity Recalls and Defendants' Recall History**

48.     Vitamin D toxicity was a known risk long before Defendants' January 31, Recall.

49.     Indeed, on December 3, 2018, the U.S. Food and Drug Administration ("FDA") alerted pet owners about potentially toxic levels of Vitamin D in several brands of dry pet foods ("December 3, 2018 Notice").[30]   Specifically, the FDA indicated that samples of the dog food

---

[30] *See* https://www.fda.gov/animalveterinary/newsevents/ucm627485.htm.

contained "excessive, potentially toxic amounts of vitamin D.  Vitamin D is an essential nutrient for dogs, but very high amounts can cause serious health problems like kidney failure or death" and that a "common contract manufacturer" supplying a vitamin premix was the source of the potentially dangerous ingredient.[31]

50.     Subsequently, on December 19, 2018, it was publicized that a ***single supplier*** was suspected in the FDA's string of Vitamin D-related pet food recalls.[32]  Specifically, the article states that "A recent rash of vitamin D-linked pet-food recalls have some experts speculating that dozen or so canine kibble brands involved get their premixed vitamins from the same place — a supplier whose identity is not known publicly" and that "***[i]t appears [these recalls] are all coming out of one manufacturing firm***."[33]

51.     Furthermore, the article cites Dr. Jennifer Larsen, an assistant professor of clinical nutrition at the University of California, Davis School of Veterinary Medicine, who "advocates for consistently testing batches of premixed vitamins before they're used in pet food," as ***"[t]here's a narrow margin between a safe amount of vitamin D and a toxic level [.]"***[34]

52.     Defendants claimed they "learned of the potential for elevated vitamin D levels in some of its canned dog foods after receiving a complaint in the United States about a dog exhibiting signs of elevated vitamin D levels."[35]

53.     Defendants subsequently investigated this issue and "confirmed elevated levels of vitamin D due to a supplier error."[36]

---

[31] *Id.*
[32] https://news.vin.com/VINNews.aspx?articleId=51391.
[33] *Id.* (emphasis added).
[34] *Id.* (emphasis added).
[35] *See* January 31, 2019 Recall.
[36] *Id.*; *see also* March 20, 2019 Recall.

54.     Interestingly, Defendants admitted that ***prior to the January 31, 2019 Recall***, they were aware that the vitamin premix used in the Recalled Products contained potentially hazardous amounts of Vitamin D, as Dr. Karen Shenoy, Defendants' associate director for veterinary affairs, stated that "the company began investigating its products ***in early December [2018]*** after being contacted by a veterinarian."[37]

55.     According to Dr. Shenoy, "Hill's employees confirmed Jan. 28 that a vitamin mix used in Hill's foods had high vitamin D content."[38]

56.     According to an April 2, 2019 Food Safety News article, entitled "Lax testing practices resulted in vitamin D overdoses in Hill's and Sunshine Mills pet food," "Toxic levels of vitamin D in Hill's Pet Nutrition canned pet foods […] could have been prevented, ***had both companies followed their own food safety plans***," and that "information obtained by Food Safety News in response to Freedom of Information (FOIA) requests" indicated that "***Hill's identified Vitamin Premix as a 'high risk' chemical hazard*** and required that the ingredient 'be analyzed and be within acceptable limits prior to unloading…into the manufacturing facility.'"[39]

57.     After issuing the January 31, 2019 Recall, "[t]ests conducted [by FDA] on a retained sample of the premix revealed a ***level of vitamin D that was roughly thirty times the target range for this ingredient***" in the Recalled Products and Defendants "acknowledged having received 85 consumer complaints reporting pet deaths."[40]

58.     According to the article, despite "having written procedures in place for receiving raw materials, ***and these procedures mandated testing for vitamin D concentration***," "Hill's […]

---

[37] *See* https://www.avma.org/News/JAVMANews/Pages/190315d.aspx (emphasis added).
[38] *Id*.
[39] *See* https://www.foodsafetynews.com/2019/04/lax-testing-practices-resulted-in-vitamin-d-overdoses-in-hills-and-sunshine-mills-pet-food/ (emphasis added).
[40] *Id*. (emphasis added).

took delivery of an ingredient that was ***substantially higher in vitamin D than specified for the purpose***."[41]

59.     Most critically, the article claims "Neither Hill's nor Sunshine ***carried out the lab analysis mandated in their written procedures***" and did not require "a Certificate of Analysis for their Vitamin D ingredient or premixes."[42]

60.     Only *after* the January 31, 2019 Recall did Defendants "[reevaluate and strengthen] its specifications, including requiring a Certificate of Analysis ***for each incoming shipment of vitamin and trace mineral premixes***."[43]

61.     Despite apparently "reevaluating and strengthening" its specifications, the January 31, 2019 Recall was expanded via the March 20, 2019 Recall as described herein.

62.     Additionally, throughout 2018, several consumers complained to Defendants that their pet dogs were suffering from symptoms related to Vitamin D toxicity and, in fact, Hill's Science Diet products have a low overall satisfaction rating on www.ConsumerAffairs.com:[44]

---

[41] *Id*. (emphasis added).
[42] *Id*. (emphasis added).
[43] *Id*. (emphasis added).
[44] *See* https://www.consumeraffairs.com/pets/science_diet html.



63.     As such, whether Defendants received the vitamin premix containing toxic amounts of Vitamin D from the same supplier as those manufacturers identified in the FDA's December 3, 2018 Notice or a different supplier, it is clear that the Recalled Products were dangerous to Plaintiff's and Class members' dogs and Hill's knew or should have known that the Recalled Products were defective, dangerous, and/or ultrahazardous for dogs prior to making them available to consumers for purchase.

64.     Defendants therefore had actual or constructive notice of the FDA's December 3, 2018 Notice and knew as of sometime during December 2018 or earlier that at least some of its products were potentially dangerous to dogs due to consumer and veterinarian complaints discussing Vitamin D toxicity symptoms in dogs who had eaten Defendants' products.

65.     Furthermore, despite claiming to employ "220+ veterinarians, PhD nutritionists and food scientists"[45] who knew or should have known that the margin between safe and toxic levels of Vitamin D is small, and thus presents an acute health risk to dogs on a batch-by-batch basis, Defendants did not issue a recall until January 31, 2019.

66.     Defendants therefore negligently, recklessly, or intentionally derogated from their advertised quality assurance and safety procedures because, in stark contrast to what they represent and warrant to Plaintiff and Class members, and in absolute friction with their "MISSION," "VISION," and "PHILOSOPHY"[46] which tout their commitment to providing a healthy and safe product, Defendants *failed* to abide by their own written procedures, *failed* to test for Vitamin D concentration, *failed* to carry out required lab analysis, and/or *failed* to require a Certificate of Analysis for Vitamin D ingredients or premixes from their supplier(s), all of which would have revealed the fact that the Recalled Products contained toxic levels of Vitamin D.

67.     As part of its January 31, 2019 Recall and March 20, 2019 Recall, and on its own website, Defendants admit that excessive consumption of Vitamin D can lead to panoply of health issues in dogs as illustrated below:

> While vitamin D is an essential nutrient for dogs, ingestion of elevated levels can lead to potential health issues depending on the level of vitamin D and the length of exposure, and dogs may exhibit symptoms such as vomiting, loss of appetite, increased thirst, increased urination, excessive drooling, and weight loss. When consumed at very high levels, vitamin D can in rare cases lead to potentially life threatening health issues in dogs, including renal dysfunction.[47]

68.     As part of its January 31, 2019 Recall, Defendants recalled the following products:

---

[45] *See* https://www.hillspet.com/about-us/nutritional-philosophy.
[46] *See* https://www.hillspet.com/about-us/our-company.
[47] *See* https://www.hillspet.com/productlist#press-release.

| Product Name | SKU Number | Lot Code/Date Code |
|---|---|---|
| Hill's® Prescription Diet® c/d® Multicare Canine Chicken & Vegetable Stew 12.5oz | 3384 | 102020T10 |
| | | 102020T25 |
| Hill's® Prescription Diet® i/d® Canine Chicken & Vegetable Stew 12.5oz | 3389 | 102020T04 |
| | | 102020T10 |
| | | 102020T19 |
| | | 102020T20 |
| Hill's® Prescription Diet® i/d® Canine Chicken & Vegetable Stew 5.5oz | 3390 | 102020T11 |
| | | 112020T23 |
| | | 122020T07 |
| Hill's® Prescription Diet® z/d® Canine 5.5oz | 5403 | 102020T17 |
| | | 112020T22 |
| Hill's® Prescription Diet® g/d® Canine 13oz | 7006 | 112020T19 |
| | | 112020T20 |
| Hill's® Prescription Diet® i/d® Canine 13oz | 7008 | 092020T30 |
| | | 102020T07 |
| | | 102020T11 |
| | | 112020T22 |
| | | 112020T23 |
| Hill's® Prescription Diet® j/d® Canine 13oz | 7009 | 112020T20 |
| Hill's® Prescription Diet® k/d® Canine 13oz | 7010 | 102020T10 |
| | | 102020T11 |
| Hill's® Prescription Diet® w/d® Canine 13oz | 7017 | 092020T30 |
| | | 102020T11 |
| | | 102020T12 |
| Hill's® Prescription Diet® z/d® Canine 13oz | 7018 | 102020T04 |
| | | 112020T22 |

| Product | | |
|---|---|---|
| Hill's® Prescription Diet® Metabolic + Mobility Canine Vegetable & Tuna Stew 12.5oz | 10086 | 102020T05 |
| | | 102020T26 |
| Hill's® Prescription Diet® w/d® Canine Vegetable & Chicken Stew 12.5oz | 10129 | 102020T04 |
| | | 102020T21 |
| Hill's® Prescription Diet® i/d® Low Fat Canine Rice, Vegetable & Chicken Stew 12.5oz | 10423 | 102020T17 |
| | | 102020T19 |
| | | 112020T04 |
| Hill's® Prescription Diet® Derm Defense® Canine Chicken & Vegetable Stew 12.5oz | 10509 | 102020T05 |
| Hill's® Science Diet® Adult 7+ Small & Toy Breed Chicken & Barley Entrée Dog Food 5.8oz | 4969 | 102020T18 |
| Hill's® Science Diet® Puppy Chicken & Barley Entrée 13oz | 7036 | 102020T12 |
| Hill's® Science Diet® Adult Chicken & Barley Entrée Dog Food 13oz | 7037 | 102020T13 |
| | | 102020T14 |
| | | 112020T23 |
| | | 112020T24 |
| Hill's® Science Diet® Adult Turkey & Barley Dog Food 13oz | 7038 | 102020T06 |
| Hill's® Science Diet® Adult Chicken & Beef Entrée Dog Food 13oz | 7040 | 102020T13 |
| Hill's® Science Diet® Adult Light with Liver Dog Food 13oz | 7048 | 112020T19 |
| Hill's® Science Diet® Adult 7+ Chicken & Barley Entrée Dog Food 13oz | 7055 | 092020T31 |
| | | 102020T13 |
| Hill's® Science Diet® Adult 7+ Beef & Barley Entrée Dog Food 13oz | 7056 | 092020T31 |
| | | 112020T20 |
| | | 112020T24 |
| Hill's® Science Diet® Adult 7+ Turkey & Barley Entrée 13oz | 7057 | 112020T19 |
| Hill's® Science Diet® Adult 7+ Healthy Cuisine Braised Beef, Carrots & Peas Stew dog food 12.5oz | 10452 | 102020T14 |
| | | 102020T21 |
| Hill's® Science Diet® Adult 7+ Youthful Vitality Chicken & Vegetable Stew dog food 12.5oz | 10763 | 102020T04 |
| | | 102020T05 |
| | | 112020T11 |

69.     As discussed herein, the initial recall affected 675,000 cases (13.5 million cans) of Defendants' products.

70.     In their initial press release on January 31, 2019, Defendants published a video to the Hill's Pet Nutrition website in which Brett Deardorff, DVM, a Hill's Veterinarian, states "[…] *we isolated and identified the issue. We now have tighter quality controls in place to prevent this*

29

*from happening again. By feeding your pet Hill's, you've placed your trust in us and we are working hard to ensure that your trust is well placed.*"[48]

71.     Contrary to Defendants' extensive warranties and representations about the quality of its products and its strict adherence to stringent quality control procedures ***which apparently included "final safety checks daily***," and its assurances that "tighter quality controls" were put in place after the January 31, 2019 recall to "prevent this from happening again," the recall was expanded on March 20, 2019 to include additional Recalled Products set forth below:

Items marked with a * are new products that were added to the list on March 20, 2019.

| Product Name | SKU Number | Date Code / Lot Code |
|---|---|---|
| *Hill's Prescription Diet k/d Kidney Care with Lamb Canned Dog Food, 13oz, 12-pack | *2697 | *102020T25 |
| *Hill's Science Diet Adult Perfect Weight Chicken & Vegetable Entrée dog food 12 x 12.8oz cans | *2975 | *092020T28 |
| *Hill's Prescription Diet c/d Multicare Urinary Care Chicken & Vegetable Stew Canned Dog Food, 5.5oz, 24-pack | *3388 | *102020T18 |
| *Hill's Prescription Diet i/d Low Fat Canine Rice, Vegetable & Chicken Stew 24 x 5.5oz cans | *3391 | *092020T27 |
| *Hill's Prescription Diet r/d Canine 12 x 12.3oz cans | *7014 | *092020T28 *102020T27 *102020T28 |
| *Hill's Science Diet Adult Beef & Barley Entrée Canned Dog Food, 13oz, 12-pack | *7039 | *092020T31 *102020T21 |
| *Hill's Science Diet Adult 7+ Healthy Cuisine Roasted Chicken, Carrots & Spinach Stew dog food 12 x 12.5oz cans | *10449 | *092020T28 |
| *Hill's® Science Diet Healthy Cuisine Adult Braised Beef, Carrots & Peas Stew Canned Dog Food, 12.5oz, 12-pack | *10451 | *102020T28 |

72.     Defendants knew that Plaintiff and Class members would purchase the Recalled Products and were the intended targets of their labeling, advertising, and marketing representations and warranties.

---

[48] *See* https://www.hillspet.com/productlist/jan-31-press-release.

73.     Defendants intended that their labeling, advertising, and marketing representations and warranties would play a substantial role in Plaintiff's and Class members' decisions to purchase the Recalled Products.

74.     Defendants directly marketed the Recalled Products to Plaintiff and Class members through statements on their website, labeling, advertising, and marketing materials.

75.     Defendants' labeling, advertising and marketing representations specified herein were false and misleading, and its conduct set forth herein breached its warranties specified herein to Plaintiff and the Class members, causing them substantial losses, such as purchasing worthless dog food that harmed their pets, causing them to incur veterinary treatment, burial and other related expenses in addition to the cost they paid for worthless dog food.

## PLAINTIFF'S INDIVIDUAL EXPERIENCE

76.     Plaintiff is the proud owner of a 9-year old English Bulldog named Goliath, pictured below:



77.     Goliath began eating certain of the Recalled Products routinely about four years ago.  Plaintiff took Goliath to the veterinarian for routine check-ups throughout his life.

78.     Plaintiff purchased at least the following Recalled Products for Goliath at retail locations such as Walmart and PetSmart, among others, near her home in Floral Park, Nassau County, New York during the past four years, including the period of January 2018 to March 2019, relying on Defendants' labeling, advertising, marketing and warranties which indicated to her that Defendants Recalled Products were at all times safe for Goliath to eat and would assist with his specific dietary needs:

- Hill's Science Diet Adult Perfect Weight Chicken & Vegetable Entrée dog food 12 x 12.8oz cans
- Hill's Science Diet Adult Beef & Barley Entrée Canned Dog Food, 13oz, 12-pack
- Hill's Science Diet Adult 7+ Healthy Cuisine Roasted Chicken, Carrots & Spinach Stew dog food 12 x 12.5oz cans
- Hill's® Science Diet Healthy Cuisine Adult Braised Beef, Carrots & Peas Stew Canned Dog Food, 12.5oz, 12-pack
- Hill's Science Diet Adult Chicken & Barley Entrée Canned Dog Food, 13 oz, 12-pack
- Hill's Science Diet Adult 7+ Beef & Barley Entrée Canned Dog Food, 13 oz, 12-pack
- Hill's Science Diet Healthy Cuisine Adult 7+ Braised Beef, Carrots & Peas Stew Canned Dog Food, 12.5 oz, 12-pack
- Hill's Science Diet Adult Turkey & Barley Dog Food 13oz
- Hill's Science Diet Adult 7+ Chicken & Barley Entrée Dog Food 13oz
- Hill's Science Diet® Adult 7+ Turkey & Barley Entrée 13oz

79.     Goliath ate roughly three 12.5 oz., 12.8 oz. or 13 oz. cans of the Recalled Products per day, translating to Plaintiff purchasing roughly two 12-packs of dog food per week in addition to occasionally purchasing single cans.

80.     The Recalled Products Plaintiff purchased in 12-packs cost between $25-$35 dollars and, when purchased as individual cans, cost between $2-$3 dollars.  As such, Plaintiff spent several thousands of dollars on the Recalled Products in the past year alone.

81.     Plaintiff paid a premium for the Recalled Products over other brands of dog food as a direct and proximate result of Defendants' pervasive labeling, advertising, and marketing

representations and warranties which communicated to Plaintiff that they were safe, more nutritious and healthier for Goliath than other dog foods, would assist with his unique developmental needs in ways that other, less expensive dog foods could not, and that the Recalled Products were subjected to rigorous quality assurance and safety inspections.

82.     Other brands of dog food are significantly less expensive than Defendants' Recalled Products.  For example, Purina One Smart Blend Vibrant Maturity Adult 7+ Turkey & Barley Entrée retails at Walmart for $1.62 per 13 oz. can,[49] Purina Beyond Grain-Free Chicken, Lamb & Spinach Recipe Ground Entree Wet Dog Food, 13-Oz, Case of 12 costs $22.56 at Walmart,[50] Purina Alpo Prime Cuts Adult Dog Food – Beef in a 13.2 oz. can costs $0.79 at Petsmart,[51] and Authority Ground Entrée Adult Wet Dog Food in a 13 oz. can costs $1.35 at Petsmart.[52]

83.     On or about December 4, 2018 and through March 11, 2019, Goliath continuously suffered from severe health issues that included vomiting, excessive drooling, excessive thirst, weight loss, and difficulty urinating, which required frequent veterinary visits resulting in Plaintiff incurring veterinary bills, prescription medication costs, and other related expenses totaling at least $741.43.

84.     Additionally, in early 2018 while Goliath was regularly consuming the Recalled Products, he suffered from renal and prostate problems and underwent related veterinary treatments, including having to be neutered at an advanced age, which totaled about $5,000 inclusive of veterinary bills, prescription costs, and other related expenses.

---

[49] https://www.walmart.com/ip/Purina-ONE-Natural-Senior-Pate-Wet-Dog-Food-SmartBlend-Vibrant-Maturity-7-Turkey-Barley-Entree-13-oz-Can/10295566.
[50] https://www.walmart.com/ip/Purina-Beyond-Grain-Free-Chicken-Lamb-Spinach-Recipe-Ground-Entree-Wet-Dog-Food-13-Oz-Case-of-12/600274142?athcpid=600274142&athpgid=athenaItemPage&athcgid=null&athznid=PWVUB&athieid=v0&athstid=CS020&athguid=79f40747-f09-16a08e90315ca4&athena=true.
[51] https://www.petsmart.com/dog/food/canned-food/purina-alpo-prime-cuts-adult-dog-food---beef-43712.html.
[52] https://www.petsmart.com/dog/food/canned-food/authority-ground-entree-adult-wet-dog-food-51069.html.

85.     On or about March 12, 2019, Plaintiff consulted with her veterinarian since Goliath's symptoms were not resolving, who advised her that Goliath's symptoms may stem from consuming the Recalled Products, ***though he did not specifically mention the January 31, 2019 Recall or that there was any recall of those products***.

86.     Plaintiff immediately stopped feeding Goliath the Recalled Products and switched to other pet food brands.

87.     Within a single day of switching Goliath's food away from the Recalled Products, his symptoms began to subside.

88.     Although Goliath's chief symptoms have begun to subside, as a result of undergoing a plethora of veterinary procedures while consuming the Recalled Products, including being neutered at an advanced age, he no longer has the same temperament, energy, or eating habits he had when Plaintiff purchased him.

## CLASS ACTION ALLEGATIONS

89.     Plaintiff seeks certification of classes under Fed.R.Civ.P. 23 (b)(1), (b)(2), (b)(3) and/or (c)(4), as may deemed appropriate by the Court.  Plaintiff brings this action on behalf of herself and on behalf of all other persons who purchased or incurred damages from Defendants' Recalled Products in the United States of America (herein throughout, the "Class"). Excluded from the Class are: (i) Defendants and their employees, principals, affiliated entities, legal representatives, successors and assigns; (ii) the judges to whom this action is assigned and any members of their immediate families; (iii) governmental entities; and (iv) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

90.    Plaintiff brings this action on behalf of proposed Subclass defined as follows:

**New York Subclass:** All persons in New York who purchased or incurred damages by using the Recalled Products.

91.    In the alternative to a Nationwide Class and New York Subclass, Plaintiff seeks certification of the following multistate class:

**Multistate Class**: All persons who purchased or incurred damages by using the Recalled Products in New York and in other states with similar consumer fraud laws and common law as applied to the facts of this action.

92.    Plaintiff reserves the right to amend or modify Class definitions with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court require.

93.    The Court can define the Class and create additional subclasses as may be necessary or desirable to adjudicate common issues and claims of the Class members if the need arises based on discovery of additional facts.

94.    Upon information and belief, there are thousands of members of the proposed Class, New York Subclass, and alternate Multistate Class (hereafter collectively, "Classes"). Indeed, due to the nature of Defendants' business and the size of the recall (at least 675,000 cases, or 13.5 million cans of the Recalled Products), Plaintiff believes there are hundreds or thousands of Class members geographically dispersed throughout the United States. Therefore, individual joinder of all members of the Classes would be impracticable.

95.    There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

96.    Common questions of law or fact exist as to all members of the Classes. These questions predominate over the questions affecting only individual members of the Classes. These common legal or factual questions include, but are not limited to:

a. Whether Defendants sold pet food products that were recalled or subject to a recall due to containing toxic levels of Vitamin D;

b. Whether Defendants advertised, represented, warranted, or held themselves out as producing or manufacturing pet food products that were fit for their intended purpose i.e. safe for regular consumption by dogs;

c. Whether Defendants advertised, represented, warranted, or held themselves out as conducting regular quality assurance and safety checks on the Recalled Products;

d. Whether Defendants knew or should have known that the Recalled Products contained toxic levels of Vitamin D;

e. Whether Defendants breached any express or implied warranties;

f. Whether Defendants purported to disclaim any express or implied warranties;

g. Whether any limitation on warranty fails to meet its essential purpose;

h. Whether Defendants intended for the Plaintiff and Class members to purchase the Recalled Products;

i. Whether Defendants intended or foresaw that Plaintiff and Class members would feed the Recalled Products to their dogs;

j. Whether the Recalled Products that contained toxic levels of Vitamin D are unfit for their intended purpose;

k. Whether using the Recalled Products as intended (i.e. to feed and provide nourishment to dogs) resulted in injury or damages to Plaintiff and Class members;

l. Whether and in what manner Defendants were negligent in manufacturing, testing, inspecting, or processing the Recalled Products;

m.     Whether and in what manner Defendants recklessly, intentionally, and/or negligently failed to test or inspect for toxic levels of Vitamin D in the Recalled Products;

n.     Whether Defendants owed a duty of care to Plaintiff and Class Members to provide them with products that are safe for consumption by dogs and to conduct regular quality assurance and safety checks;

o.     Whether Defendants breached the duty to provide Plaintiff and Class members with products that are safe for consumption by dogs and to conduct regular quality assurance and safety checks;

p.     Whether Defendants owed a duty to appropriately and timely warn Plaintiff and Class members about the substantial health risks for dogs associated toxic levels of Vitamin D present in the Recalled Products;

q.     Whether Defendants breached the duty to appropriately and timely warn Plaintiff and Class members about the substantial health risks for dogs associated toxic levels of Vitamin D present in the Recalled Products;

r.     Whether Defendants' negligence proximately caused loss, injury, or damages to Plaintiff and the Class members;

s.     Whether Defendants' representations and warranties in labeling, advertising, marketing and other statements are deceptive, false, or misleading;

t.     Whether Defendants had knowledge that their representations and warranties were deceptive, false, or misleading;

u.     Whether Defendants appropriately and timely warned Plaintiff and Class members about the significant health risks to dogs associated with the Recalled Products;

37

v.      Whether Defendants intentionally, recklessly, or negligently delayed in initiating a recall of the Recalled Products;

w.      Whether the January 31, 2019 Recall and March 20, 2019 Recall were adequate and properly notify Plaintiff and Class members;

x.      Whether Defendants' conduct constituted unlawful, unfair, deceptive, or false business practices in violation of the state consumer fraud statutes invoked herein;

y.      Whether Defendants have been unjustly enriched as a result of their alleged conduct;

z.      Whether Defendants' conduct is unethical, oppressive and/or substantially injurious to consumers;

aa.     Whether Plaintiff and Class members suffered direct losses or damages;

bb.     Whether Plaintiff and Class members suffered indirect losses or damages; and,

cc.     Whether Plaintiff and Class members are entitled to actual or other forms of damages and other monetary relief, including but not limited to punitive damages.

97.     The Classes are ascertainable because their definition is objective and specific. Class members may be identified through claim forms or receipts.  Additionally, Class members may be identified through records of authorized retailers selling Defendants' Recalled Products nationwide and in New York.  Certain authorized retailers maintain "reward" programs, pursuant to which consumers provide their name and personal information and are issued a "reward" card. These retailers encourage consumers to display their "reward" card when making purchases by offering discounts and other incentives exclusively to consumers who show their "reward" card when making purchases.  As a result, retailers who use "reward" card programs retain records sufficient to show which Class members' "reward" cards are associated with purchases of

Defendants' Recalled Products.   Moreover, because Defendants' labeling, marketing, and advertising campaign as described herein is so pervasive, there is no concern that the Classes include individuals who were not exposed to the misrepresentations.

98.    Plaintiff's claims are typical of the claims of the Classes, in that she is a consumer who purchased Recalled Products in New York that were labeled, marketed, advertised, represented, and warranted as being safe and healthy for regular consumption by dogs.   Plaintiff, therefore, is no different in any relevant respect from any other Class member, and the relief sought is common to the Classes.

99.    Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the members of the Classes she seeks to represent, and she has retained counsel competent and experienced in conducting complex class action litigation.   Plaintiff and her counsel will adequately protect the interests of the Classes.

100.    A class action is superior to other available means for the fair and efficient adjudication of this dispute.   The damages suffered by each individual member of the Classes will likely be relatively small, especially given the cost of Recalled Products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' conduct.   Thus, it would be virtually impossible for members of the Classes to effectively redress the wrongs done to them through individual actions.   Moreover, even if members of the Classes could afford individual actions, it would still not be preferable to class-wide litigation.   Individual actions also present the potential for inconsistent or contradictory judgments, which would be dispositive of at least some of the issues and hence interests of the other members not party to the individual actions, would substantially impair or impede their ability to protect their interests, and would establish incompatible standards of conduct for the party opposing the class.   By contrast,

a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

101.    Plaintiff and her counsel anticipate that notice to the proposed Classes will be effectuated through recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

102.    Further, in the alternative, the action may be maintained as a class action with respect to particular issues, pursuant to Fed.R.Civ.P. 23(c)(4).

## COUNT I

**(Deceptive Acts or Practices, New York Gen. Bus. Law. § 349 on behalf of the New York Subclass)**

103.    Plaintiff brings this Count I individually and on behalf of the members of the New York Subclass.

104.    By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by misrepresenting the Recalled Products as safe and healthy for regular consumption by dogs when they in fact they contain dangerous and toxic levels of Vitamin D.

105.    The foregoing deceptive acts and practices were directed at consumers, and have had a broad impact on consumers in New York.

106.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally mislead and misrepresent the characteristics and ingredients of the Recalled Products as being safe, heathy and superior to other dog foods to induce consumers to purchase the Recalled Products.

107.    Plaintiff and members of the New York Subclass were injured because they paid for the Recalled Products, which they would not have done had they known the truth that the Recalled Products in fact contained dangerous and toxic levels of Vitamin D.

40

108.     Plaintiff and members of the New York Subclass were injured because they paid a price premium for the Recalled Products and received a worthless product since it was not fit for its intended purpose as a dog food.  Plaintiff and members of the New York Subclass would not have purchased the Recalled Products, let alone paid a premium price for them, had they known the truth that the Recalled Products contained dangerous and toxic levels of Vitamin D and were essentially worthless as a dog food.

109.     Plaintiff, on behalf of herself other members of the New York Subclass, bring this Count to recover actual damages or $50.00, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

110.     Plaintiff's claims under New York Gen. Bus. Law. § 349 are representative of similar claims available to non-New York Class members under the laws of other states, which are also amenable to further sub-class or multistate class treatment, particularly where the counterpart laws require no showing of reliance or employ and objective reliance standard.  Such laws may include, but are not limited to: Ala. Code §§ 8-19-1 et seq.; Alaska Stat. § 45.50.471; Ariz. Rev. Stat. Ann. §§ 44-1521 et seq.; Ark. Code Ann. § 4-8-01, et seq.; Cal. Civil Code §§ 1770 et seq. and Cal. Bus. & Prof. Code §§ 17200 et seq.; Colo. Rev. Stat. §§ 6-1-05 et seq.; Conn. Gen. Stat. Ann. §§ 42-110a et seq.; Del. Code Ann. Tit. 6 §§ 2511 et seq. & 2531 et seq.; D.C. Code Ann. §§ 28-3901 et seq.; Fla. Stat. §§ 501.201 et seq.; Ga. Code Ann. §§ 10-1-372 and 10-1-420; Haw. Rev. Stat. §§ 480-1 et seq.; Idaho Code §§ 48-601 et seq.; 815 Ill. Comp. Stat. 505/1 et seq.; Ind. Code Ann. 24-5-0.5-3; Iowa Code § 714.16; Kan. Stat. Ann. §§ 50-623 et seq.; Ky. Rev. Stat. Ann. § 367.170; La. R.S. §§ 1401 et seq.; Me. Rev. Stat. Ann tit. 5, §§ 205-A et seq.; Md. Code Ann., Com. Law §§ 13-301 et seq.; Mass. Ge. Laws ch. 93A, §§ 1 et seq.; Mich. Comp. Laws Ann. §§ 445.901 et seq.; Minn. Stat. §§ 325D.44 et seq.; Miss. Code Ann. §§ 75-24-1 et seq.; Mo. Ann.

Stat. §§ 407.010 et seq.; Mont. Code Ann. §§ 30-14-101 et seq.; Neb. Rev. Stat. Ann. §§ 59-1601 et seq.; Nev. Rev. Stat. Ann. §§ 598.0903 et seq.; N.H. Rev. Stat. Ann. §§ 358-A:1 et seq.; N.J. Stat. Ann. §§ 56:8-1 et seq.; N.M. Stat. Ann. §§ 57-12-1 et seq.; N.C. Gen. Stat. §§ 75-1 et seq.; N.D. Cent. Code §§ 51-12-01 et seq. and 51-15-01 et seq.; Ohio Rev. Code Ann. §§ 1345.01 et seq.; Okla Stat. Ann. Tit. 15, §§ 751 et seq.; Or. Rev. Stat. §§ 646.605 et seq.; 73 Pa. Cons. Stat. §§ 201-1 et seq.; R.I. Gen. Laws §§ 6-13.1-1 et seq.; S.C. Code Ann. §§ 39-5-10 et seq.; S.D. Codified Laws §§ 37-24-1 et seq.; Tenn. Code Ann. § 47-18-109(a)(1); Tex. Bus. & Com. Code Ann. §§ 17.41 et seq.; Utah Code Ann. §§ 13-11-1 et seq.; Vt. Stat. Ann. Tit. 9, §§ 2453 et seq.; Va. Code Ann. §§ 59.1-196 et seq.; Wash Rev. Code Ann. §§ 19.86.010 et seq.; W. Va. Code 46A-6-101 et seq.; Wis. Stat. Ann. § 100.18; and Wyo. Stat. Ann. §§ 40-12-101 et seq.

## COUNT II

**(False Advertising, New York Gen. Bus. Law. § 350 on behalf of the New York Subclass)**

111.   Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

112.   Plaintiff brings this Count II individually and on behalf of the members of the New York Subclass.

113.   Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

114.   Defendants' Recalled Products' labeling, advertising, and marketing claims were false, misleading and deceptive statements and representations of fact that were directed to consumers.

115.    The Recalled Products' false, misleading and deceptive labeling, advertising, and marketing claims have resulted in consumer injury and harm to the public interest.

116.    As a result of the Recalled Products' labels' false, misleading and deceptive labeling, marketing, and advertising statements and representations of fact, Plaintiff and New York Subclass members have suffered and continue to suffer economic injury.

117.    Plaintiff and the New York Subclass suffered an ascertainable loss caused by Defendants' Recalled Products' labeling, advertising, and marketing claims because they purchased and paid more for the Recalled Products, which they would not have done had they known the truth that they were defective, dangerous, and/or ultrahazardous for dogs due to containing toxic levels of Vitamin D.

118.    Plaintiff, on behalf of herself and other members of the New York Subclass, seeks to recover actual damages or $500.00, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT III

**(Breach of Express Warranty on behalf of the Nationwide Class and New York Subclass or, alternatively, the Multistate Class)**

119.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

120.    Plaintiff brings this Count III individually and on behalf of Class members for the Classes, all of whom were reasonably foreseeable users of the Recalled Products.

121.    Defendants are and at all relevant times were merchants under the Uniform Commercial Code.

122.    Defendants expressly represented and warranted to Plaintiff and the Class members that the Recalled Products were safe for their intended purpose which is consumption by dogs and,

in particular, being healthy (e.g., by representing on the Recalled Products' labels that they were "VETERINARIAN RECOMMENDED," "CLINICAL NUTRITION" or "THERAPEUTIC DOG NUTRITION", and other reinforcing representations specified throughout this Complaint).

123.    Defendants expressly represented and warranted to Plaintiff and the Class members that it would conduct regular and rigorous quality assurance and safety inspections on the Recalled Products to ensure that they were safe for consumption by dogs.

124.    Defendants' representations and warranties were made to Plaintiff and members of the Class in writing through Defendants' website, advertisements, marketing materials, and labels for the Recalled Products.

125.    The Recalled Products did not conform to these express representations and warranties because the Recalled Products are not safe for consumption by dogs and cause serious side effects in dogs due to Vitamin D toxicity, including illness and death, rendering them entirely worthless as a dog food.

126.    The foregoing representations and warranties are material to consumers because they concern the fitness of Defendants' Recalled Products and directly influenced Plaintiff and Class members' decision to purchase them.

127.    Plaintiff and Class members were injured as a direct and proximate result of purchasing and using the Recalled Products based on Defendants' express representations and warranties that the Recalled Products were food that was safe and healthy for dogs, which express representations and warranties were breached by Defendants' Recalled Products containing toxic levels of Vitamin D.

128.    On April 9, 2019, prior to filing this action, Defendants were served with a pre-suit notice letter that complied in all respects with N.Y. U.C.C. §§ 2-313 and 2-607 and the materially

similar pre-suit notice requirements of other states.  Plaintiff's counsel sent Defendants a letter advising that it breached express warranties and demanded that it provide Plaintiff with an accounting of its sales and profits (both gross and net profits) for its Recalled Products sold within the past year nationwide, pay compensatory damages to Plaintiff and all other putative class members nationwide, including but not limited to full refunds for all of the Recalled Products that they purchased, veterinary bills, prescription medication costs and related expenses, and for those whose dogs died, funeral and burial fees along with the value of the deceased dog, and for New York consumers, statutory damages pursuant to New York's General Business Law §§ 349 and 350, along with attorneys' fees and expenses.

**COUNT IV**

**(Breach of Implied Warranty on behalf of the Nationwide Class and New York Subclass or, alternatively, the Multistate Class)**

129.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

130.    Plaintiff brings this Count IV individually and on behalf of Class members for the Classes, all of whom were reasonably foreseeable users of the Recalled Products.

131.    Defendants are and at all relevant times were merchants under the Uniform Commercial Code.

132.    Defendants manufactured, marketed, sold, and distributed the Recalled Products.

133.    At the time Defendants manufactured, labeled, advertised, marketed, sold, and distributed the Recalled Products, Defendants knew of the purpose for which the Recalled Products were intended, specifically to safely nourish dogs and particularly address the specific needs of Plaintiff's and Class members' dogs, and impliedly warranted that the Recalled Products were of merchantable quality and safe and fit for such uses.

134.    Plaintiff and Class members could not have known about the risks associated with the Recalled Products until after they were disclosed by Defendants.

135.    Contrary to Defendants' implied warranty, the Recalled Products were not of merchantable quality and were not safe or fit for their intended use due to containing toxic levels of Vitamin D, rendering them entirely worthless as a dog food.

136.    Defendants knew or should have known that the Recalled Products were unsafe and defective either prior to or at the time it placed the Recalled Products into the stream of commerce, and that they breached the aforementioned implied warranties at the time they distributed, sold, or otherwise made the Recalled Products available to Plaintiff and Class members.

137.    Neither Plaintiff nor Class members altered the Defendants' Recalled Products after purchasing them and used them as instructed.

138.    The foregoing representations and warranties are material to consumers because they concern the fitness of Defendants' Recalled Products and directly influenced Plaintiff and Class members' decision to purchase them.

139.    Plaintiff and Class members were injured as a direct and proximate result of purchasing and using the Recalled Products based on Defendants' implied warranties that the Recalled Products were food that was safe and healthy for dogs, which implied warranties were breached by Defendants' Recalled Products containing toxic levels of Vitamin D.

140.    On April 9, 2019, prior to filing this action, Defendants were served with a pre-suit notice letter that complied in all respects with N.Y. U.C.C. §§ 2-314 and 2-607 and the materially similar pre-suit notice requirements of other states.  Plaintiff's counsel sent Defendants a letter advising that it breached implied warranties and demanded that it provide Plaintiff with an accounting of its sales and profits (both gross and net profits) for its Recalled Products sold within

the past year nationwide, pay compensatory damages to Plaintiff and all other putative class members nationwide, including but not limited to full refunds for all of the Recalled Products that they purchased, veterinary bills, prescription medication costs and related expenses, and for those whose dogs died, funeral and burial fees along with the value of the deceased dog, and for New York consumers, statutory damages pursuant to New York's General Business Law §§ 349 and 350, along with attorneys' fees and expenses.

## COUNT V

**(Negligence on behalf of the Nationwide Class and New York Subclass or, alternatively, the Multistate Class)**

141.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

142.    Plaintiff brings this Count V individually and on behalf of Class members for the Classes.

143.    Plaintiff and Class members, as dog owners, are within the foreseeable zone of injury risk or other losses in the event Defendants' Recalled Products were defective, unreasonably dangerous, ultrahazardous, and/or otherwise negligently formulated, manufactured, produced, and/or inspected, which risks Defendants knew or should have known.

144.    Defendants expressly acknowledged that they undertake regular daily quality assurance and safety checks to ensure that its Recalled Products were safe for consumption by dogs.

145.    Defendants therefore owed Plaintiff and Class members a duty to offer only safe products for consumption by Plaintiff's and Class members' dogs.

146.    Through their failure to exercise due care, Defendants breached this duty by producing, processing, manufacturing, distributing, and otherwise offering for sale the Recalled

Products in a defective, dangerous, and/or ultrahazardous condition that were unhealthy, unsafe, and damaging to Plaintiff's and Class members' dogs.

147.    Defendants also breached their duty of care to Plaintiff and Class members by failing to utilize adequate quality control, carry out adequate testing, engage in proper manufacturing, production, formulation, or processing, and by failing to take reasonably sufficient measures to prevent the Recalled Products from being distributed, offered for sale, sold, or fed to Plaintiff's and Class members' dogs.

148.    Defendants knew, or in the exercise of reasonable care should have known, that the Recalled Products presented and undue risk of harm to Plaintiff and Class members' dogs and would result in damages that were reasonably avoidable and foreseeable.

149.    Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach of this duty of care and suffered losses and damages.

## <u>COUNT VI</u>

**(Strict Product Liability – Design Defect on behalf of the Nationwide Class and New York Subclass or, alternatively, the Multistate Class)**

150.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

151.    Plaintiff brings this Count VI individually and on behalf of Class members for the Classes.

152.    Defendants are the producers, designers, manufacturers, formulators, and/or distributors of the Recalled Products.

153.    Defendants' Recalled Products left Defendants' possession in an unreasonably dangerous condition.

48

154.    Defendants' Recalled Products reached Plaintiff and Class members without substantial change in condition, as they were packaged, distributed, and sold in sealed packaging, and the defects alleged existed when the Recalled Products left Defendants' control.

155.    The Recalled Products which, among other potential defects, contained toxic levels of Vitamin D, were in an unreasonably dangerous condition because they failed to perform as safely as an ordinary consumer would expect when used the Recalled Products as intended or when using the Recalled Products in a manner reasonably foreseeable to Defendants, and because the foreseeable risks of using the Recalled Products outweighed the benefits of their use, and were essentially worthless as a dog food.

156.    Plaintiff and Class members used the Recalled Products as intended and in a manner reasonably foreseeable to Defendants.

157.     As the direct and foreseeable result of the defective condition of the Recalled Products as produced, manufactured, and/or distributed by Defendant, Plaintiff and Class members suffered losses and damages.

## COUNT VII

**(Strict Product Liability – Manufacturing Defect on behalf of the Nationwide Class and New York Subclass or, alternatively, the Multistate Class)**

158.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

159.    Plaintiff brings this Count VII individually and on behalf of Class members for the Classes.

160.    Defendants are the producers, designers, manufacturers, formulators, and/or distributors of the Recalled Products.

161.   Defendants' Recalled Products left Defendants' possession in an unreasonably dangerous condition.

162.   Defendants' Recalled Products reached Plaintiff and Class members without substantial change in condition, as they were packaged, distributed, and sold in sealed packaging, and the defects alleged existed when the Recalled Products left Defendants' control.

163.   The Recalled Products were unreasonably dangerous because they deviated from Defendants' intended design and failed to perform as safely as Defendants' intended design would have performed.

164.   Among other potential defects, the Recalled Products failed to perform as safely as Defendants' design intended because the Recalled Products contained toxic levels of Vitamin D, rendering them entirely worthless as a dog food.

165.   Defendants' could have utilized a reasonable and feasible alternative design, ingredient, or manufacturing method to eliminate the defect but failed to do so.

166.   Plaintiff and Class members used the Recalled Products as intended and in a manner reasonably foreseeable to Defendants.

167.   The risk of harm associated with the Recalled Products outweighs their intended benefit because the Recalled Products contained toxic levels of Vitamin D and were entirely worthless as a dog food.

168.   As the direct and foreseeable result of the defective condition of the Recalled Products as produced, manufactured, and/or distributed by Defendant, Plaintiff and Class members suffered losses and damages.

## COUNT VIII

**(Strict Product Liability – Failure to Warn on behalf of the Nationwide Class and New York Subclass or, alternatively, the Multistate Class)**

169.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

170.     Plaintiff brings this Count VIII individually and on behalf of Class members for the Classes.

171.     Defendants are the producer, manufacturer, formulator, and/or distributor of the Recalled Products.

172.     Defendants could have reduced, prevented or avoided the foreseeable risks of harm to Plaintiff and Class members had Defendants provided reasonable and timely warnings that the Recalled Products contained toxic levels of Vitamin D and were not fit for their intended use as a dog food.

173.     Defendants' failure to provide reasonable and timely warnings rendered the Recalled Products unreasonably dangerous and/or ultrahazardous to Plaintiff and Class members' dogs.

174.     As the direct and foreseeable result of Defendants' failure to provide reasonable and timely warnings, Plaintiff and Class members suffered losses and damages.

## COUNT IX

**(Negligent Failure to Warn on behalf of the Nationwide Class and New York Subclass or, alternatively, the Multistate Class)**

175.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

176.     Plaintiff brings this Count IX individually and on behalf of Class members for the Classes.

177.     Plaintiff and Class members were at all times within the foreseeable zone of risk or injury or other losses should Defendants fail to provide reasonable and timely warnings of the substantial risks associated with feeding the Recalled Products to their dogs due to them containing toxic levels of Vitamin D, and Defendants in the reasonable exercise of due care knew or should have known of these substantial risks.

178.     Defendants owed Plaintiff and Class members a duty to appropriately and timely warn of the substantial risks associated with feeding the Recalled Products to their dogs by virtue of their affirmative acknowledgement that they undertake regular daily quality assurance and safety checks to ensure that the Recalled Products were safe for consumption by dogs.

179.     Defendants breached this duty by failing to appropriately and timely warn Plaintiff and Class members of the substantial risks associated with feeding the Recalled Products to their dogs.

180.      Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach of this duty of care and suffered losses and damages.

## COUNT X

**(Unjust Enrichment on behalf of the Nationwide Class and New York Subclass or, alternatively, the Multistate Class)**

181.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

182.     Plaintiff brings this Count X individually and on behalf of Class members for the Classes.

183.     By selling the Recalled Products which contained toxic levels of Vitamin D and, therefore, were entirely worthless as a dog food, Defendants obtained money from Plaintiff and Class members.

184.     By virtue of the unlawful conduct described herein, Defendants will be unjustly enriched if they are permitted to retain the money they obtained from Plaintiff and Class members for Recalled Products Defendants labeled (and reinforced that labeling with an advertising and marketing campaign) as being safe and healthy for regular consumption by dogs when they are actually worthless as a dog food due to containing toxic levels of Vitamin D which can lead to severe health issues in dogs, including death.

185.     In equity and good conscience, Defendants should be required to return to Plaintiff and Class members amount they paid to purchase these Recalled Products.  Otherwise, Defendants will be unjustly enriched and Plaintiff Class members will be left without adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the Classes request an award, relief and entry of a judgment, as follows:

A.     An order certifying that this action is properly brought and may be maintained as a class action; that Plaintiff Reed be appointed representative of the Classes; and that Feinstein Doyle Payne & Kravec, LLC be appointed Lead Counsel or Co-Lead Counsel for the Classes.

B.     Restitution in such amount that Plaintiff and members of the Classes paid to purchase the Recalled Products or paid as a premium over alternative products, together with the cost of veterinary treatment, burial and other expenses, for Causes of Action for which it is available.

C.     Compensatory damages for Causes of Action for which they are available.

D.     Statutory damages allowable under New York Gen. Bus. Law §§ 349 and 350-e.

E.     Punitive damages for Causes of Action for which they are available.

F.      An Order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest.

G.      Such other and further relief as may be deemed necessary or appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action and/or issues so triable.

DATED:  April 16, 2019

**FEINSTEIN DOYLE PAYNE
& KRAVEC, LLC**

By: */s/Joseph N. Kravec, Jr.*
    Joseph N. Kravec, Jr. (No. JK-3696)

29 Broadway, 24th Floor
New York, NY 10006-3205
Telephone:  (212) 952-0014
Email: jkravec@fdpklaw.com

 and

429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007

*Counsel for Plaintiff and the Proposed Classes*